| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

ENTERTAINMENT BY J & J, INC., §
§
    Plaintiff, §
§
versus                                  §             CIVIL ACTION H-01-2514
§
AL-WAHA ENTERPRISES, INC. a/k/a §
EL-MIRAGE MEDITERRANEAN CUISINE §
d/b/a EL-MIRAGE a/k/a EL-MIRAGE §
RESTAURANT and IYAD OMAR KHALIL, §
§
    Defendants. §

United States Courts
Southern District of Texas
ENTERED
JUL 2 5 2002
Michael N. Milby, Clerk of Court

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff Entertainment by J & J, Inc.'s ("EJJ") Motion for Summary Judgment (#20). EJJ seeks summary judgment against Defendant Al-Waha Enterprises, Inc. a/k/a El-Mirage Mediterranean Cuisine d/b/a El-Mirage a/k/a El-Mirage Restaurant ("Al-Waha") on its claims under Section 705 of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605 ("FCA"). Iyad Omar Khalil ("Khalil") has previously been dismissed as a defendant in this action without prejudice due to his pending, personal bankruptcy proceeding. Having reviewed the motion, the summary judgment evidence, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

I.    <u>Background</u>

Plaintiff EJJ is a corporation organized and existing under the laws of the State of California with its principal place of business located in San Jose, Santa Clara County, California. Defendant Al-Waha is a corporation incorporated in Texas, otherwise known as "El-Mirage Restaurant," which conducts business utilizing the assumed names "El-Mirage" and/or "El-Mirage



Mediterranean Cuisine," located at 9350 Westheimer Road, Houston, Harris County, Texas. Khalil is an individual, residing in Houston, Harris County, Texas, who is an officer, incorporator, and director of Defendant Al-Waha.

On June 1, 1999, EJJ entered into a closed-circuit television license agreement ("the License Agreement") to exhibit the September 18, 1999, championship boxing match between Oscar De La Hoya and Felix Trinidad from the Mandalay Bay Resort & Casino in Las Vegas, Nevada, including undercard and preliminary bouts (collectively the "Event"), at locations throughout Texas, including theaters, arenas, bars, lounges, and restaurants. The Event was to be exhibited in commercial establishments only if the closed-circuit broadcast was contractually authorized by EJJ.

Pursuant to the License Agreement, EJJ marketed and distributed the closed-circuit rights to commercial establishments in exchange for a sublicense fee. The establishments were contractually required to charge their patrons an admission fee for attending the exhibition of the Event. The interstate satellite transmission of the Event was electronically coded or scrambled and was not intended for receipt by the general public. Commercial establishments were provided electronic decoding equipment and/or satellite coordinates necessary to receive the signal to broadcast the Event clearly.

The record reflects that Al-Waha did not contract with EJJ to obtain the rights to broadcast the Event, and on September 18, 1999, exhibited an unauthorized telecast of the Event at the premises of El-Mirage. On the night of the Event, a private investigator for EJJ, Christopher Jenkins ("Jenkins"), observed the Event being telecast to approximately seventy-five persons at the restaurant.

EJJ instituted this action on July 26, 2001, asserting that Al-Waha, through the commercial establishment, El-Mirage Restaurant, willfully and wrongfully intercepted and exhibited the Event, without authorization and without paying EJJ a sublicense fee, in violation of the FCA. On April 25, 2002, EJJ filed a Motion for Summary Judgment attaching uncontroverted affidavits establishing Al-Waha's violation of 47 U.S.C. §§ 553 and 605 and seeking the recovery of statutory damages in the amount of $25,000 to compensate for willful violation of the Act, attorney's fees of $4,000, and costs of court. On May 6, 2002, Khalil filed a Suggestion of Bankruptcy. Neither Khalil nor Al-Waha responded to Plaintiff's motion for summary judgment.

II.   Analysis

  A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir. 1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir. 1998); *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir. 1997), *cert. denied*, 523 U.S. 1073 (1998). A material fact is one that might affect the outcome of the suit under governing law. *See*

*Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000); *Colson*, 174 F.3d at 506; *Marshall*, 134 F.3d at 321-22; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n.14 (5th Cir. 1993)); *see Reeves*, 530 U.S. at 150; *Colson*, 174 F.3d at 506; *Marshall*, 134 F.3d at 321; *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997), *cert. denied*, 525 U.S. 1067 (1999); *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir. 1997), *cert. denied*, 525 U.S. 1103 (1999). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990); *see Christopher Vill.*

4

*Ltd. P'ship v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999); *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Marshall*, 134 F.3d at 321. The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *accord Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Furthermore, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075; *see Hart*, 127 F.3d at 435; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990) (citing *Anderson*, 477 U.S. at 247-48). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which it bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Wenner*, 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

  B. <u>The Federal Communications Act</u>

  As an amendment and supplement to the FCA, "Congress enacted the Cable Communications Policy Act of 1984 to address 'a problem which is increasingly plaguing the cable industry—the theft of cable service.'" *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 1127 (2002) (quoting H. R. Rep. No. 98-934, at 83 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720)). "The legislative history associated with section 553 and the amendments to section 605 reveals [sic] that one of Congress's principal objectives was to discourage theft of cable services." *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (citing *Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 961 (N.D. Ill. 2000)). Thus, Congress enacted a variety of penalties and remedies to "'protect the revenue of television cable companies from unauthorized reception of their transmissions.'" *Id.* & n.18 (quoting *Boom Town Saloon, Inc.*, 98 F. Supp. 2d at 961 (quoting *Time Warner Entm't/Advance-Newhouse P'ship v. Worldwide Elec., L.C.*, 50 F. Supp. 2d 1288, 1293 (S.D. Fla. 1999))).

  Section 553(a) of the FCA provides, in relevant part:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). "Any person aggrieved by a violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction." *Id.* at § 553(c)(1). Similarly, Section 605(a) states:

> No person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

Both Sections 553 and 605 provide an array of civil and criminal remedies for the unauthorized interception and subsequent transmission of cable signals. *See* 47 U.S.C. §§ 553(b)-(c), 605(c); *Massachi*, 239 F.3d at 673-74. The statutes provide any "person aggrieved" by a violation of Section 553 or 605 with a private right of action. *See* 47 U.S.C. §§ 553(c)(1), 605(c)(3)(A). Although Section 553 does not contain a definition of "person aggrieved," Section 605(d) defines this term as "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming . . . ." 47 U.S.C. § 605(d)(6).

Several courts have held that the unauthorized interception and broadcast of either satellite or cable transmissions violates both 47 U.S.C. §§ 553 and 605. *See, e.g., International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131-33 (2d Cir.), *cert. denied*, 519 U.S. 929 (1996) (holding that claims of unauthorized broadcasts of cable television transmissions may be brought under both 47 U.S.C. §§ 553 and 605); *Entertainment by J & J, Inc. v. Nina's Rest. & Catering*, No. 01 CIV. 5483KMWRLE, 2002 WL 1000286, at *2-3 (S.D.N.Y. May 9, 2002) (determining that defendant's unauthorized interception and broadcast of a boxing match violated Sections 553

7

and 605 of the FCA); *Kingsvision Pay-Per-View, Ltd v. 2182 La Caridad Rest., Inc.*, No. 01 CIV. 7595(HB), 2002 WL 654137, at *3 (S.D.N.Y. Apr. 18, 2002) (holding that defendant's unauthorized interception and broadcast of a boxing match violated Sections 553 and 605 of the FCA); *Time Warner Cable of N.Y. City v. Taco Rapido Rest.*, 988 F. Supp. 107, 110 (E.D.N.Y. 1997) (determining that both provisions applied when defendant illegally intercepted and broadcast a pay-per-view boxing event); *Home Box Office v. Gee-Co, Inc.*, 838 F. Supp. 436, 439 (E.D. Mo. 1993) (finding that defendant's unauthorized interception of cable communications services violated Section 553 and its unauthorized display of a satellite broadcast boxing event violated Section 605, where both violations were committed through the use of a satellite receiver with a "pirate chip" installed); *but see United States v. Norris*, 88 F.3d 462, 468-69 (7th Cir. 1996) (citing H. R. REP. NO. 934, at 83-84, reprinted in 84 U.S.C.C.A.N. at 4720-21) (holding that unauthorized interception of cable television programming traveling "through the air" is governed by Section 605 while the unauthorized interception of cable television programming through a cable network is governed by Section 553). The Fifth Circuit has not yet addressed this issue. *Cf. Prostar*, 239 F.3d 671-74 (discussing the similarities between Section 553 and 605, but not directly addressing whether a claim can be brought under both provisions).

EJJ relies on two uncontroverted affidavits to support its allegation that Al-Waha committed a violation of 47 U.S.C. §§ 553 and 605. Jenkins's affidavit states that, on September 18, 1999, he observed a broadcast of the Event over five television monitors at Al-Waha in the presence of approximately seventy-five patrons. EJJ also attaches the affidavit of Skip M. Klauber ("Klauber"), an attorney in fact for EJJ. Klauber's affidavit establishes that EJJ had the exclusive, proprietary right to exhibit and sublicense exhibition of the Event to closed circuit locations in the

8

State of Texas and that Al-Waha did not obtain authorization from EJJ to display the Event. EJJ's uncontroverted summary judgment evidence establishes that Al-Waha violated 47 U.S.C. §§ 553 and 605. *See, e.g., Nina's Rest. & Catering*, 2002 WL 1000286, at *2-3; *2182 La Caridad Rest., Inc.*, 2002 WL 654137, at *3; *Taco Rapido Rest.*, 988 F. Supp. at 110; *Gee-Co, Inc.*, 838 F. Supp. at 439.

Having established Al-Waha's violation of 47 U.S.C. §§ 553 and 605 through uncontroverted affidavits, EJJ seeks damages under both provisions. Furthermore, EJJ suggests that Al-Waha committed this violation "willfully and for purposes of direct or indirect commercial advantage or private financial gain," which entitles EJJ to enhanced damages under both FCA provisions. Finally, EJJ seeks an award of attorney's fees and court costs.

With respect to damages, Section 553 provides as follows:

> The party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

47 U.S.C. § 553(c)(3)(A)(ii). Additionally, if the court finds that the violation was committed "willfully and for purposes of commercial advantage or private financial gain," the court may, in its discretion, increase the award of damages by an amount of not more than $50,000. 47 U.S.C. § 553(c)(3)(B). The court also has discretion to award attorney's fees. *See* 47 U.S.C. § 553(c)(2)(C).

Similarly, Section 605 permits recovery of the following damages:

> (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10, 000, as the court considers just . . . .

47 U.S.C. § 605(e)(3)(C)(i)(II). If the court determines that a violation of Section 605 is "committed willfully and for purposes of commercial advantage or private financial gain," the court may, in its discretion, increase the award of damages by an amount of not more than $100,000. 47 U.S.C. § 605(e)(3)(C)(ii). Unlike Section 553, Section 605 requires the court to award attorney's fees if a violation is found. *See* 47 U.S.C. § 605(e)(3)(C)(iii).

A majority of courts that have dealt with a violation of both sections of the FCA award damages only under Section 605 because that provision allows for greater recovery by plaintiffs. *See Sykes,* 75 F.3d at 127; *Nina's Rest. & Catering,* 2002 WL 1000286, at *2-3; *2182 La Caridad Rest., Inc.,* 2002 WL 654137, at *3; *Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999); *Taco Rapido Rest.,* 988 F. Supp. at 110; *Time Warner Cable of N.Y. City v. United States Cable T.V., Inc.,* 920 F. Supp. 321, 328-29 (E.D.N.Y. 1996). Recovery generally is not available under both provisions. *See Nina's Rest. & Catering,* 2002 WL 1000286, at *2-3; *2182 La Caridad Rest., Inc.,* 2002 WL 654137, at *3; *but see Gee-Co, Inc.,* 838 F. Supp at 439-40 (awarding damages under Section 553 and Section 605). The determination as to the total amount of damages awarded under Section 605 is within the discretion of the court. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II).

Courts have developed two approaches for determining statutory damages under Section 605. One approach is to base the award of damages on the number of patrons in the establishment at the time of the violation. *See, e.g., Googies Luncheonette, Inc.,* 77 F. Supp. 2d at 490 (awarding $50 per patron); *Taco Rapido Rest.,* 988 F. Supp. at 111 (awarding $50 per patron). Another method is to award a flat sum for damages. *See, e.g., 2182 La Caridad Rest., Inc.,* 2002 WL 654137, at *2 (awarding $20,000); *Kingvision Pay-Per-View Corp. v. Papacito Lidia*

*Luncheonette*, No. 01 CIV. 7575, 2001 WL 1558269, at *2 (S.D.N.Y. Dec. 6, 2001) (awarding $20,000); *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding $5,000).

Because EJJ has proven, through the uncontroverted affidavit of Jenkins, the presence of seventy-five patrons at Al-Waha during the Event, the per-patron approach is an appropriate starting point for calculating damages in this case. EJJ asserts that license fees are based on a minimum capacity of fifty patrons at $20 per potential patron. Based on a capacity of seventy-five, EJJ would have charged Al-Waha $1,500 for a license to broadcast the Event. Therefore, although EJJ has furnished the court no information regarding the total capacity of Al-Waha, EJJ lost at least $1,500 as a result of Al-Waha's misappropriation of the broadcast. The deterrence of future violations, however, is one of the objectives of the statute, as evidenced by the minimum award of $1,000. *See Nina's Rest. & Catering*, 2002 WL 1000286, at *2-3. Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute. "There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Id.* at *3. Thus, to deter Al-Waha from future violations of the statute, the damages amount should be increased to $5,000. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II).

EJJ maintains that Al-Waha's violations of Sections 553 and 605 of the FCA were committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," and, therefore, it is entitled to enhanced damages under the statute. 47 U.S.C. § 605(e)(3)(C)(ii). Aside from a conclusory allegation that Al-Waha could not have "'innocently' accessed the broadcast of the event," EJJ has offered no direct evidence that it acted willfully and

11

for purposes of direct or indirect commercial advantage or private financial gain. EJJ has not submitted any evidence that Al-Waha charged admission to the establishment on the evening of the broadcast or openly advertised the broadcast in an effort to maximize profits. Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of Al-Waha in this case to be willful and for the purposes of direct or indirect commercial advantage or private financial gain. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc. No. 2*, 172 F. Supp. 2d 810, 812 (S.D.W.Va. 2001); *Googies Luncheonette, Inc.*, 77 F. Supp. 2d at 490; *Taco Rapido Rest.*, 988 F. Supp. at 111. Additionally, "[w]illfulness has been defined by the Supreme Court as 'disregard for the governing statute and an indifference for its requirements.'" *Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27 (1985)). Thus, based on the foregoing definition, the case law on this issue, and the unlikelihood of inadvertently intercepting the broadcast of the Event, the court concludes that Al-Waha's violation of the statute was willful. Consequently, the damages award should be tripled to $15,000.

In sum, based on the summary judgment record, including evidence of a single unauthorized transmission, the fact that Jenkins observed only seventy-five people in the establishment during the broadcast, the lack of evidence that Al-Waha repeatedly committed such violations and will likely continue to violate the law, and EJJ's affidavit in support of damages, the court finds that a statutory award of $15,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II) and (ii) is warranted in this case.

Furthermore, under 47 U.S.C. § 605(e)(3)(B)(iii), EJJ is entitled to recover its reasonable attorney's fees and costs of court incurred in pursuing this action. EJJ has established by the

affidavit of Mark C. Watler ("Watler"), EJJ's attorney of record in this case, attorney's fees in the amount of $4,000. Watler's fees are reasonable and were necessarily incurred in the prosecution of this case. Therefore, as required by the statute, EJJ is awarded attorney's fees in the amount of $4,000 and costs of court as permitted by statute.

III.   Conclusion

There exist no outstanding issues of material fact, and EJJ is entitled to judgment as a matter of law. Accordingly, EJJ's Motion for Summary Judgment is granted. Final judgment will be entered in favor of EJJ on its causes of action under 47 U.S.C. §§ 553 and 605 against Al-Waha.

IT IS SO ORDERED.

SIGNED at Houston, Texas, this _24th_ day of July, 2002.

*Marcia A. Crone*
Marcia A. Crone
United States Magistrate Judge